**\*\* NOT FOR PUBLICATION \*\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

———————————————————
:
MARIA BROADNAX,                                     :
                                                    :
                    Plaintiff,      :      Civil Action No. 10-837
                                                    :
        v.                                          :      **OPINION**
                                                    :
BOROUGH OF NORTH PLAINFIELD, et al.:
                                                    :
                    Defendants.     :
                                                    :
———————————————————

**<u>WOLFSON, United States District Judge:</u>**

Presently before the Court is a Motion for Summary Judgment by Defendants Borough of North Plainfield Police Department ("Borough"), Officer Ryan Mote ("Officer Mote"), Lt. Joseph Mack, and Chief William G. Parenti (collectively, "Defendants"), on Plaintiff Maria Broadnax's ("Plaintiff's" or "Broadnax's") complaint alleging violation of her fourth amendment right to be free from unreasonable search and seizure, pursuant to 42 U.S.C. § 1983, among other claims. For the following reasons, Defendants' motion for summary judgment is denied with respect to Plaintiff's fourth amendment claim and her attorney's fees claim, brought pursuant to 42 U.S.C. § 1988, against Officer Mote. Summary judgment is granted with respect to Plaintiff's remaining claims as to Officer Mote and as to all claims against all other defendants.

I.      BACKGROUND

A.      Facts

Because the Court is considering the facts in the context of Defendants' Motion for Summary Judgment, the Court must view the facts in the light most favorable to Plaintiff.  Moreover, because Defendants have not presented any evidence in support of their motion for summary judgment, and simply rely upon Plaintiff's deposition testimony, an Internal Affairs Complaint form Plaintiff filed against Officer Mote, and a prior warning ticket issued to Plaintiff for driving with tinted windows in October of 2008, see Def. Mov. Br., Exh. B, the Court's recitation of facts is drawn primarily from Plaintiff's deposition testimony and the parties' Statements of Undisputed Material Facts.

On December 11, 2008, Plaintiff was driving on Route 22 in the vicinity of the Borough of North Plainfield in New Jersey.  Pl. Dep. Tr. ("Tr.") 15:11-23.  At the time, she was driving her then-boyfriend, Rahson Thorn ("Rahson" or "Thorn"), to work on a cold, rainy day.  Internal Affiars Compl. Form, Exh. B to Def. Mov. Br., at 2.  She was pulled over by Officer Mote for driving a vehicle with tinted windows.

Patrol Officers DeJesus and Perrone then arrived on the scene.[1]  Def. Stat. Mat. Facts at ¶ 3; Pl. Counterstat. Mat. Facts at ¶3.  Plaintiff testified at her deposition that, after those officers arrived, Officer Mote instructed her to hand over her license, registration, and insurance.  She complied with his request.  Tr. 16:2-18.  After being prompted by another officer, Officer Mote asked for her documents a second time and

---

[1]      These officers are not named defendants in this action.

Plaintiff ultimately complied with that request as well.  Id. at 17:9-22.

Officer Mote then directed Plaintiff to get out of the car.  Id. at 19:4-16.  Plaintiff was wearing a "hoodie" sweatshirt, and she asked one of the other officers if she could place her hands into the pockets of her sweatshirt.  Id. at 19:20-20:12.  Of her own volition, she emptied out her pockets to show him that there was nothing hidden in the pockets.  Upon seeing nothing in her pockets, the officer told her that she could put her hands back into her pockets.

After this interchange with the other officer, Officer Mote yelled at Plaintiff for placing her hands in her hoodie pockets.  She told Officer Mote that the other officer had "already searched [her] and . . . said [she] could put [her] hands in [her] pocket." Tr. 20:4-7.  Nonetheless, Plaintiff took her hands out of her pocket as Officer Mote walked toward her.  Id. at 20:8-13.  Plaintiff testified that she unzipped her hoodie so that the officers could see that she did not have anything under the hoodie, and that none of the officers "patted [her] down …."  Id. at 21:6-15.  It is not clear from her deposition testimony whether she unzipped her hoodie before or after Officer Mote approached her, though it appears from the context of her testimony that she had unzipped her hoodie beforehand.

Officer Mote approached Plaintiff and, according to her testimony, "started going through [her] pockets.  And he tried to put his [fingers] in [her] pants pocket . . . and [she] stepped back from him."  Id. at 20:22-25.  Specifically, she testified

> I had on a pair of jeans and they [were] tight jeans.  And he
> — after he put his hands in my hoodie he tried to put his

3

> hand in my pocket like push his hand down there.  And it
> was so tight he was like trying to shove his hand in there
> and I stepped back from him.

Id. at 21:19-25.  Before Plaintiff backed away from him, Officer Mote was able to reach

into her jeans' pocket up to his knuckles.  See id. at 22:9-18.  His hand came out of her

pockets when she stepped away from him.  Id. at 22:22-25.

　　　Thereafter, the officers searched Plaintiff's car and dumped out items from her

purse.  Id. at 24:10-17.  One of the officers pushed up the passenger seat during the

search.  He discovered an empty bottle of champagne or some other alcoholic beverage

under the passenger seat where Thorn had been sitting.  Id. at 25:19-26:1.  Officer

Mote's role in the search of the vehicle was limited to observing the other officers and

"lift[ing] up a couple of papers that were dumped from [Plaintiff's] purse ...."  Id. at

28:1-5.

　　　At some point during the stop, Officer Perrone asked Plaintiff to write down her

passenger's name on a piece of paper.  Id. at 30:16-21.  She indicated that his name

was Rahson and that she "call[ed] him Sean for short."  Id. at 30:18-20.  According to

Plaintiff, that officer told her that "I'll them how you cooperated and stuff . . . 'cause

[Rahson's] not trying to give us his name."  Id. at 30:19-21.  Plaintiff then asked Officer

DeJesus "why can't I leave?," to which question the officers responded "we have to find

out [Rahson's] information" first.  Id. at 31:19-22.

　　　Defense counsel asked Plaintiff if she agreed with Officer DeJesus' statement

that he overheard her telling Officer Perrone that Rahson's name was "Jason."[2]

---

[2]　　　At Plaintiff's deposition, defense counsel indicated that the officers disagree with

4

Plaintiff responded to defense counsel's question by stating that

> That's not true . . . [b]ecause Rahson was off to the side.
> And Officer Perrone was standing over there by him.  He
> was like away from the car in front of the car further down
> from me.  And he was standing over there with him.

Id. at 31:10-14.  In response to a question from defense counsel as to whether she
agreed with Thorn's statement to the police that she provided a false name to the
officers, Plaintiff then reiterated that "[Rahson] wasn't even standing near me.  They
didn't even have us standing near each other."  Id. at 32:7-9.

Ultimately, Plaintiff received a ticket for driving with tinted windows and one
for having an open container in the vehicle.  The open container ticket was
subsequently dismissed and Thorn received a ticket for not wearing his seat belt.  Id. at
34:13-35:18.

### B.   Procedural History

On February 18, 2010, Plaintiff filed the instant complaint asserting the
following claims:  Count I - assault and battery against Officer Mote; Count II – failure
to train and supervise against the Borough, Chief of Police William G. Parenti, and Lt.
Joseph Jack; Count III[3] – negligent hiring, training, and supervision  against those

---

Plaintiff's version of the events surrounding her giving Rahson's true name to the
officers.  See id. at 31:5-32:9.  Plaintiff stated that she "disagreed" with what defense
counsel described as the officers' testimony that she lied about Rahson's name and did
not cooperate with the officers.  Id. at 32:2-24.  Because the Court must view the facts
in the light most favorable to the non-moving party, the Court accepts Plaintiffs'
version of events as true for purposes of this motion.

[3]      For Counts II and III, Plaintiff also named John Doe defendants.  Plaintiff has
not sought to substitute those defendants with actual parties.

same defendants; Count IV – punitive damages against all defendants; Count V – a 42 U.S.C. § 1983 claim against all defendants for violation of Plaintiff's fourth amendment rights[4]; Count VI[5] - a 42 U.S.C. § 1988 claim against all defendants.

Following discovery, Defendants filed a Motion for Summary Judgment to dismiss Counts I, V, and VI, arguing that Officer Mote's search and seizure of Plaintiff was lawfully conducted. With respect to Count V - the section 1983 claim, Defendants further argue that Officer Mote is entitled to qualified immunity for that claim. For Counts II and III – the failure-to-train and negligent hiring, training, and supervision claims, Defendants contend that Plaintiff failed to adduce any evidence to support those claims. Finally, with respect to Count IV – punitive damages, Defendants argue that Plaintiff has failed to adduce any evidence of malicious intent or reckless indifference to her rights. The motion is now ripe for decision.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 F.3d 317 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes over

---

[4]     In her complaint, Plaintiff cites to the fourth, fifth, and fourteenth amendments in connection with her section 1983 claim. However, in her opposition papers she describes her section 1983 solely as a fourth amendment claim. Accordingly, the Court construes her claim in the same manner.

[5]     This last count references the New Jersey Tort Claims Act, N.J.S.A. 59:2-2 as well as "the aws of the State of New Jersey." Compl., ¶ 51-2. However, section 1988 is a fee-shifting statute applicable to actions brought under section 1983. See 42 U.S.C. § 1988(b).

irrelevant or unnecessary facts will not preclude a grant of summary judgment. Anderson, 477 U.S. at 248.  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255)); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002).

The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment.  Celotex, 477 U.S. at 330.  "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).  The non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005) (quotations omitted).  Under Anderson, Plaintiff's proffered evidence must be sufficient to meet the substantive evidentiary standard the jury would have to use at trial.  477 U.S. at 255.  To do so, the non-moving party must "go-beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (quotations omitted); see also Matsushita, 475 U.S. at 586; Ridgewood BD. Of Ed. v. Stokley, 172 F.3d 238, 252 (3d Cir. 1999).  In deciding

the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 249. Credibility determinations are the providence of the factfinder. <u>Big Apple BMW, Inc. v. BMW of N. Am., Inc.</u> 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> at 323; <u>Katz v. Aetna Cas. & Sur. Co.</u>, 972 F.2d 53, 55 (3d Cir. 1992).

## III.   DISCUSSION

In her opposition papers, Plaintiff does not respond to several of Defendants' challenges on summary judgment. Noticeably, she does not challenge summary judgment on Count I – the assault claim against Officer Mote, Count II – the failure to train and supervise against the Borough, Chief of Police William G. Parenti, and Lt. Joseph Jack, Count III – the negligent hiring, training, and supervision claim against those same defendants, and Count IV – the punitive damages against all defendants. Accordingly, the Court hereby dismisses Counts I – IV of the complaint.

This leaves only Count V – the section 1983 claim and Count VI - the section 1988 claim for attorney's fees. Although the caption to the section 1983 count in her complaint states that it is against "all defendants," in her opposition papers she

challenges only Officer Mote's actions, and not the actions of any other defendant, in arguing that summary judgment is not appropriate on that claim.  Therefore, the Court treats the section 1983 claim as against only Officer Mote.  The same holds true with respect to Plaintiff's section 1988 claim for attorney's fees, which claim relates solely to the 1983 claim.  With no other claims pending against the remaining defendants, the Court hereby dismisses all other defendants from this suit.

While Defendants moved for summary judgment on the section 1988 claim, summary judgment would be appropriate only if the Court grants summary judgment on the section 1983 for the alleged substantive constitutional violation.  Hence the Court's analysis focuses first on Plaintiff's section 1983 claim.

"Section 1983 grants individuals 'access to a federal forum for claims of unconstitutional treatment at the hands of state officials.'"[6] McMullen v. Maple Shade Tp., --- F.3d ---, 2011 WL 2519702, *2 (3d Cir. 2011) (quoting Heck v. Humphrey, 512 U.S. 477, 480 (1994)).  The parties agree that the initial stop of Plaintiff's vehicle for a traffic violation (tinted windows) was permissible, and that Officer Mote violated no law by directing Plaintiff to step out of her vehicle.  Indeed, "[a] police officer who

---

[6]

> Every person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

observes a violation of state traffic laws may lawfully stop the car committing the violation" and order the driver and passengers out of the vehicle. U.S. v. Bonner, 363 F.3d 213, 216 (3d Cir. 2004) (citing Pennsylvania v. Mimms, 434 U.S. 106 (1977) and Maryland v. Wilson, 519 U.S. 408 (1997)).  The parties' dispute centers on whether Officer Mote's actions in seizing Plaintiff, and searching her by reaching his hand into jeans pockets, violated her fourth amendment right to be free from unreasonable search and seizure.[7]

Defendants argue that the officer's actions are sanctioned by Pennsylvania v. Mimms, 434 U.S. 106 (1977), as well as various New Jersey state law decisions, and that Officer Mote is entitled to qualified immunity, in any event.  As an initial matter, the Court notes that federal—not state—precedent governs this Court's section 1983 analysis since Plaintiff's fourth amendment claim originates from the U.S. Constitution.  "[B]y its terms, § 1983 provides a remedy for violations of federal, not state or local, law."  McMullen, 2011 WL 2519702 at *2.  As at least one of the state cases cited by Defendants, State v. Baum, 393 N.J.Super. 275 (App. Div. 2007), correctly acknowledges, the line of federal cases that addresses the reasonableness of search and seizures in an automobile stop stems from Terry v. Ohio, 392 U.S. 1 (1968).

Terry involved an encounter between police and an individual on the street, as opposed to in a vehicle, but "the [Supreme] Court has [since] extended the

---

[7]     Plaintiff does not challenge Mote's search of the vehicle or his putting his hands in her hoodie pocket.  She challenges only his seizure of her and search of her jeans pocket.

constitutional principles in <u>Terry</u> to situations involving officers and motorists." <u>U.S. v. Moorefield</u>, 111 F.3d 10, 13 (3d Cir. 1997).  Applying the principles originally set forth in <u>Terry</u>, federal courts have distilled the following law that guides the Court's analysis here.  First, as noted, in the course of a stop for a traffic violation, an officer may order the driver and passengers out of the vehicle.  <u>Bonner</u>, 363 F.3d at 216. "[D]uring a lawful traffic stop an officer may order a passenger out of the car as a precautionary measure, without reasonable suspicion that the passenger poses a safety risk."  <u>Brendlin v. California</u>, 551 U.S. 249, 258 (2007).  And, the officer may ask questions about matters unrelated to the original justification for the stop as long as the questions do not prolong the duration of the stop.  <u>See</u> <u>Muehler v. Mena</u>, 544 U.S. 93, 100-101 (2005) (search of home); <u>U.S. v. Mendez</u>, 476 F.3d 1077, 1080 (9th Cir. 2007) (applying <u>Mena</u> to traffic stop).[8]

Second, "the officer may pat down the occupants of the vehicle and conduct a search of the passenger compartment, *if he has a reasonable suspicion that the occupants might be armed and dangerous*."  <u>Id.</u> (emphasis added) (citing <u>Michigan v. Long</u>, 463 U.S. 1032, 1049–50 (1983); <u>Mimms</u>, <u>supra</u> at 111-12; <u>Terry</u>, <u>supra</u> at 17; <u>Moorefield</u>, <u>supra</u> at 13-14).  <u>See also</u> <u>U.S. v. Kithcart</u>, 218 F.3d 213, 219 (3d Cir. 2000). To demonstrate that a reasonable suspicion existed at the time of the stop, the officer must point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warranted the pat-down." <u>Kithcart</u>, 218 F.3d at

---

[8]      As discussed infra, <u>Arizona v. Johnson</u>, 555 U.S. 323, 129 S.Ct. 781, 784 (2009), confirmed that <u>Mena</u> applies to traffic stops.

219 (quoting <u>Moorefield</u>, 111 F.3d at 14).   Whether an officer's suspicion was a reasonable one is an objective test, not a subjective one.  <u>See</u> <u>Johnson v. Campbell</u>, 332 F.3d 199, 206-07 (3d Cir. 2003).  <u>See also</u> 4 LaFave, SEARCH & SEIZURE 9.6.

In early 2009, the Supreme Court reiterated that an officer must have this sort of reasonable suspicion, *i.e.*, "that the person subjected to the frisk is armed and dangerous" in order "[t]o justify a patdown of the driver or passenger during a traffic stop …." <u>Arizona v. Johnson</u>, 555 U.S. 323, 129 S.Ct. 781, 784 (2009).  In addition, the Court summarized its traffic stop jurisprudence as follows:

> A lawful roadside stop begins when a vehicle is pulled over for investigation of a traffic violation. The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop. Normally, the stop ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave. An officer's inquiries into matters unrelated to the justification for the traffic stop, this Court has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop.

<u>Id.</u> at 787 (internal citations omitted).  In setting forth this summary, the Court cited cases decided prior to Plaintiff's stop in December of 2008.

Returning to Defendants' argument, they contend that Officer Mote's seizure of Plaintiff and search of her jeans pockets was proper.  As to the seizure, Defendants are correct that Officer Mote was well within his authority to detain Plaintiff during the duration of the stop and to ask her questions.  The preceding case law makes this clear. In her opposition papers, while recognizing that the <u>Terry</u> line of cases applies to her claim, Plaintiff seems to suggest that Officer Mote needed probable cause of criminal

12

activity in order to detain her.  <u>Compare</u> Pl. Opp. at 5 <u>with</u> <u>id.</u> at 6-7. But, as explained

by the Supreme Court in <u>Arizona v. Johnson</u>, when a driver is lawfully pulled over for a

traffic violation, as Plaintiff concedes she was, "[t]he temporary seizure of driver and

passengers ordinarily continues, and remains reasonable, for the duration of the stop."

 <u>Id.</u> at 787.  Moreover, as <u>Johnson</u> further explained, an officer may inquire, as Officer

Mote did here, about matters unrelated to the stop as long as that questioning did not

extend the duration of the stop.  Plaintiff has not argued, nor pointed to any evidence

before this Court, that the stop was extended on account of Officer Mote's questioning

of her.  Accordingly, she has not presented evidence from which a reasonable juror

could conclude that the seizure was improper.

　　Whether the search of Plaintiff's jeans pockets was proper is a more nuanced

analysis.  The typical search involves more than an officer reaching his fingers into a

pocket and having them slide out as the detained driver pulls herself away.  Not

surprisingly, Defendants contend that this sort of limited contact does not constitute a

search or improper frisk under the fourth amendment. [9]  However, <u>Terry</u> drew a bright-

line distinction between an officer patting down an individual's "outer clothing" and an

officer "plac[ing] his hands in their pockets …."  392 U.S. at 29.  That court explained:

> The sole justification of the search in the present situation
> is the protection of the police officer and others nearby, and

---

[9]     To the extent that Defendants seek to characterize Officer Mote's reaching into
Plaintiff's pocket as an attempted, as opposed to completed, search, the Court rejects
Defendants' invitation to splice the officer's action in such a hypertechnical manner.
Rather, the Court addresses the question of whether reaching into an individual's
pocket, whether or not the officer's fingers reach the bottom of that pocket, is a search
or frisk that exceeds the bounds set forth in <u>Terry</u>.

it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.

The scope of the search in this case presents no serious problem in light of these standards. [The] [o]fficer . . . patted down the outer clothing of petitioner and his two companions. *He did not place his hands in their pockets or under the outer surface of their garments until he had felt weapons, and then he merely reached for and removed the guns.* [With respect to another individual that was patted-down, the officer] *never did invade [the individual's] person beyond the outer surfaces of his clothes,* since he discovered nothing in his patdown which might have been a weapon.

Id. (emphasis added).

In a companion case to Terry, Sibron v. New York, 392 U.S. 40 (1968), the Supreme Court held that a police officer who made "no attempt at an initial limited exploration for arms, [but] thrust his hand into [the individual's] pocket …." was a "search [that] was not reasonably limited in scope to the accomplishment of the only goal which might conceivably have justified its inception—the protection of the officer by disarming a potentially dangerous man." Id. at 65. Years later, in Minnesota v. Dickerson, 508 U.S. 366 (1993), the Supreme Court held than an officer who reached into an individual's pocket after "squeezing, sliding and otherwise manipulating the contents" from the outside of the pocket violated that individual's fourth amendment rights once the initial pat down revealed no weapons. Id. at 378.

Since Terry, Sibron, and Dickerson, courts have permitted officers to bypass the outer-clothing pat-down requirement where there were other indices that an individual was armed and dangerous, such as a refusal to follow the officer's directions during a

14

lawful traffic stop when that refusal is accompanied by a report that the individual was armed and dangerous and/or travelling in a high-crime area, <u>Bonner</u>, 363 F.3d at 217-18, or when an individual is wearing an item of clothing, like "hard leather" boots, that could not feasibly be patted down externally, <u>U.S. v. Albert</u>, 579 F.3d 1188, 1196 (10th Cir. 2009).[10] <u>See also</u> LaFave, 4 SEARCH & SEIZURE § 9.6 (collecting and cataloging cases). In contrast, where there was no evidence that an officer could have reasonably believed that an individual had a weapon in his pocket, an officer who reached inside a pocket did not "confine[ ] his search to what was minimally necessary to ensure [the individual] was not armed." <u>Albert</u>, 579 F.3d at 1196. Thus, even when a "pat-down was reasonable at its inception, it [can] bec[o]me an impermissible frisk" once an officer reaches into an individual's pocket without reasonably concluding that the individual was armed and dangerous. <u>Id.</u> <u>Accord</u> <u>U.S. v. Campa</u>, 234 F.3d 733 (1st Cir. 2000) (holding that a search violated the fourth amendment where officer "made no attempt to distinguish between bulging items that could be weapons and other types of concealed objects, reaching into appellant's pockets whenever he felt a protrusion ….").

Here, Defendants argue that Officer Mote was justified in reaching into Plaintiff's jeans pocket because she and her passenger, Thorn, were uncooperative. Specifically, Defendants argue that Thorn provided a fake name to the officers and was subsequently arrested on outstanding warrants after he finally revealed his true identity. In Defendants' view, "his lack of cooperation . . . justified the continued stop

---

[10]     Similarly, and understandably, courts have held that a an officer may reach into an individual's pocket once the individual had admitted after questioning that he or she has a weapon. <u>See</u> <u>U.S. v. Street</u>, 614 F.3d 228 (6th Cir. 2010).

and the fact that the plaintiff wanted to put her hands in her pockets while standing outside her vehicle justified a cursory check to be sure she didn't have any weapons." Def. Mov. Br. at 6.

As the foregoing cases suggest, a driver or passenger's failure to cooperate during a lawful traffic stop may lead an officer to reasonably conclude that either or both are armed and dangerous.  In such an instance, the officer could be free to conduct a <u>Terry</u> frisk, <u>i.e.</u>, pat down, to confirm that the individual was not concealing any weapons.  The problem with Defendants' argument here is that the only facts before this Court are Plaintiff's account in her deposition, and those facts do not support Defendants' version of events.

While Defendants argue that Thorn's lack of cooperation justified the search of Plaintiff's pocket, when viewed in the light most favorable to Plaintiff, Plaintiff's deposition testimony suggests that the search of her pocket took place *prior to* Rahson's provision of a fake name.  The chronology she describes is that, after she exited the car, she offered to and did unzip her hoodie and revealed the inside of those pockets.  Officer Mote then reached inside her jeans pocket.  Nowhere does her testimony suggest that Officer Mote or one of the other officers questioned Thorn or her beforehand.  To the extent Defendants seek to contend a different chronology, they must adduce evidence in support of that contention and Defendants have failed to do so here.  In that connection, even if Defendants had produced a declaration contrary to

Plaintiff's deposition testimony, such evidence would have only created a genuine issue of material fact precluding the award of summary judgment.

Moreover, to the extent Defendants argue that Plaintiff's desire to place her hands in her hoodie pocket suggested she was carrying a weapon, Plaintiff's deposition testimony states otherwise.  She testified that she asked permission from one of the officers to place her hands in her pocket because it was cold and that officer granted her permission.  Defendants, further, contend in their briefing that the police discovered that Thorn had outstanding warrants yet Defendants fail to point to any record evidence to support that contention.

Furthermore, Defendants presented no testimony from Officer Mote by way of certification or declaration that he reasonably believed Plaintiff was armed and dangerous.  This is the quintessential <u>Terry</u> inquiry.  Without evidence of this nature submitted by Defendants, the Court is left only with Plaintiff's deposition testimony which does not factually support Defendants' argument.

Indeed, Plaintiff's testimony, which must be viewed in the light most favorable to her at this juncture, suggests that Officer Mote's search of her jeans pockets was unreasonable.  She testified in her deposition that her jeans were so tight that Officer Mote's hands slid out when she backed away from him.  It is unlikely that an officer could reasonably suspect that a weapon was hidden in a pocket in a pair of tight jeans.  Moreover, according to Plaintiff's testimony, Officer Mote did not first attempt to pat-down her jeans pocket to look for a bulge.  And, based on her testimony, he could not argue that her tight jeans were akin to hard leather boots whose contents cannot be

17

ascertained by patting down their outside area.  Contrary to <u>Terry</u>'s dictate, under Plaintiff's version of events, Officer Mote did not limit his initial search to her outer clothing "until he . . . felt weapons," 392 U.S. at 29, but bypassed this critical step without providing the Court with a justification for so doing.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in h[er] favor.'" <u>Marino</u>, 358 F.3d at 247 (<u>quoting</u> <u>Anderson</u>, 477 U.S. at 255)).  It may be that Plaintiff will not ultimately succeed at trial on this claim once her testimony is subjected to cross-examination.  From the tenor and substance of defense counsel's questioning at Plaintiff's deposition, it appears that Defendants may dispute both Plaintiff's chronology of events as well as other details of her account.  Nevertheless, based on record before the Court at this time, Defendants' motion for summary judgment on Plaintiff's fourth amendment claim must be denied.

Defendants next argue that Officer Mote is entitled to qualified immunity.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known'." <u>Bayer v. Monroe County Children & Youth Servs.</u>, 577 F.3d 186, 191 (3d Cir. 2009) (quoting <u>Pearson v. Callahan</u>, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009)).  More simply stated, qualified immunity is "an entitlement not to stand trial or face the burdens of litigation." <u>Mitchel v. Forsyth</u>, 472 U.S. 511, 526 (1985).  This defense strikes a

balance, shielding those officers from liability that mistakenly, but reasonably believed their actions were lawful while permitting a plaintiff to recover against those defendants that knowingly violated the plaintiff's rights. <u>Curley v. Klem</u>, 499 F.3d 199, 206-07 (3d Cir. 2007).

In assessing whether qualified immunity applies, courts consider two inquiries: (i) whether the facts alleged, when viewed in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right; and (ii) whether the right that was [allegedly] violated was clearly established, *i.e.*, whether it would be clear to a reasonable officer that his or her conduct was unlawful in the situation he or she confronted. <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001) <u>overruled in part by</u> <u>Pearson</u>, 129 S.Ct. at 818. <u>Pearson</u> relaxed the rigid two-step application of the <u>Saucier</u> analysis in favor of a more flexible approach that permits the judges of district courts and courts of appeals "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." 129 S.Ct. at 818.

In light of the Supreme Court's decision in <u>Pearson,</u> 129 S.Ct. at 818, the Court need not determine the first step of the qualified immunity analysis. Instead, the Court focuses on the second step, which is: "whether the right that was violated was clearly established or, in other words, 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted'." <u>Curley v. Klem</u>, 499 F.3d at 207 (quoting <u>Saucier</u>, 533 U.S. at 202). Reasonable mistakes regarding what the law requires are still entitled to qualified immunity. <u>Green v. N.J. Police</u>, 246

19

Fed.Appx. 158, 162 (3d Cir. 2007). Thus, Plaintiff's claim can only survive the second step of the qualified immunity analysis if, given his version of events, there is no room for reasonable disagreement among reasonable prison officers as to the lawfulness of Defendants' actions.

Here, Terry's requirement that an officer reasonably believe an individual is armed and dangerous prior to reaching into that individual's pockets was clearly established at the time of Plaintiff's search in December of 2008. By that time, several Supreme Court cases, including Sibron and Dickerson, relied upon Terry's distinction between a pat-down of an individual's external clothing and reaching into that individual's pocket. While the post-2008 decision in Arizona v. Johnson summarized Terry's application to traffic stops, no new law (relevant here) was created by that case. Rather, Johnson reaffirmed principles already established in case law. See Moorefield, 111 F.3d at 13 (recognizing in 1997 that "the [Supreme] Court has [since] extended the constitutional principles in Terry to situations involving officers and motorists.").

Accordingly, the Court concludes that Officer Mote is not entitled to qualified immunity on the record now before the Court and, consequently, denies Defendant's motion for summary judgment on this basis. Because the Court denies summary judgment on Plaintiff's fourth amendment claim, neither is summary judgment appropriate, at this juncture, on Plaintiff's 42 U.S.C. § 1988 claim for attorney's fees in Count VI.

## IV.   Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is denied with respect to Plaintiff's fourth amendment claim (Count V) against Officer Mote and Plaintiff's attorney's fees claim (Count VI), also against Officer Mote.   Summary judgment is granted with respect to Plaintiff's remaining claims, and all other defendants are dismissed from this action.   An accompanying Order will be entered.


                                        /s/ Freda L. Wolfson
                                        Hon. Freda L. Wolfson, U.S.D.J.

Dated:  July 19, 2011


21